UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIE DUMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-01348-MPB-KMB |
| | ) | |
| PROPER, | ) | |
| ASH, | ) | |
| SPIVEY, | ) | |
| COHEN, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Presently pending before the Court is Defendants' Motion for In Camera Inspection and Protective Order. Dkt. 29. In this case, Plaintiff Willie Dumes alleges that Defendants failed to protect him from an attack by other inmates. Specifically, he alleges that on April 6, 2023, Defendants saw him arguing with two other inmates, at which point he told Defendants that he had been threatened and his life was in danger. Dkt. 1. He asked them to either move him to a new housing unit or move the other inmates to the other side of the cellhouse, but Defendants refused. *Id.* Later, when he went to get cleaning supplies, the other inmates attacked him, which they were able to do because Defendants failed to ensure that they were secured in their cells at the time of the attack. *Id.* Defendants ask the Court to excuse them from producing certain photographs and video footage of witness interviews generated as part of an investigation into the attack on Plaintiff. Dkt. 29. They produced the video footage and photographs for the Court's in-camera inspection, dkts. 32, 33, and the Court has reviewed the produced materials such that the Defendants' request for an in camera inspection is **granted**, dkt. [29].

Federal Rule of Civil Procedure 26(b)(1) provides, in relevant part, as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26 further states that a court may issue a protective order "for good cause ... to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This includes prescribing alternate methods of conducting discovery and requiring that certain confidential information "be revealed only in a specified way," among other methods of protecting a party's interests during discovery. *Id.* The United States Supreme Court has long established that "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Before issuing the requested protective order, the Court must independently determine whether "good cause" exists to issue the order. *Pierson v. Indianapolis Power & Light Co.*, 205 F.R.D. 646, 647 (S.D. Ind. 2002); *see also Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 945 (7th Cir. 1999); *see also* Fed. R. Civ. P. 26(c)(1)(G). In addition, when prison administrators assert that producing confidential documents would present a safety or security threat, courts give deference to their judgment. *Cf., e.g.*, *Wells v. Israel*, 854 F.2d 995, 998 (7th Cir. 1988); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

As set forth in Defendants' motion for protective order and a supporting affidavit from an internal affairs investigator, the physical altercation that is at issue in this lawsuit was captured by surveillance cameras, and that footage has been produced to Plaintiff. Dkt. 29 at 2. In addition, after the incident, prison officials investigated and the results were summarized in a report that has

also been produced to Plaintiff and is in the record as dkt. 29-1. As part of the investigation, four inmates and 12 staff members were interviewed on video. Those interviews are summarized in the report that has been produced to Plaintiff, but Defendants ask the Court for a protective order excusing them from producing the actual video footage of the interviews. During the investigation, various photographs were also taken, including photographs of weapons recovered after the altercation, photographs of injuries sustained by both Plaintiff and other inmates, and photographs of another inmate who was not injured. Defendants have produced the photographs of Plaintiff's injuries to him but ask for a protective order excusing them from producing the photographs of the weapons and the other inmates.

Defendants argue that the materials they wish to protect are confidential under Indiana law and not normally available to inmates or the public. Dkt. 29. As to the video footage of the interviews, they contend that giving Plaintiff access would present various security risks, including the possibility that Plaintiff could use what he sees in the videos to retaliate against the interviewees, to engage in misconduct, or to thwart future investigations. *Id.* They argue that these risks outweigh any benefits of disclosure because the interviews are accurately summarized in the investigative report that has been produced to Plaintiff. *Id.* As to the photographs, they argue that allowing Plaintiff to have photographs of the weapons at issue could allow him to tell other inmates how to make homemade weapons and that giving Plaintiff photographs of other inmates would violate their privacy. *Id.*

Plaintiff objects, arguing that Defendants are withholding vital information that he needs to prove his case. Dkt. 35. He contends that if the Court finds that allowing him to have the materials at issue would present a security risk, then the Court should hire a third party to transcribe the videos and photographs for him and hold the materials for potential use at trial. *Id.*

The Court has conducted an in-camera review of the materials at issue. As to the photographs, the Court agrees that good cause exists to excuse Defendants from producing the photographs to Plaintiff at this point in the litigation. The key issues in this lawsuit are whether Defendants were aware of an imminent threat to Plaintiff and, if so, whether they failed to take appropriate steps to protect him. No one disputes that weapons were involved in the physical altercation at issue or that the participants, including the Plaintiff, were injured. Because of this, the Court concludes that the relevance of the photographs of the weapons and the other inmates is marginal at best, and the Court agrees that valid security and privacy risks associated with allowing Plaintiff access to these photographs outweigh Plaintiff's interest in viewing the photographs.

As to the video recordings, the Court also agrees that good cause exists to excuse Defendants from producing them to Plaintiff at this point, with one exception detailed below. The Court has reviewed both the video recordings and the investigative report produced to Plaintiff. The investigated report accurately summarizes the relevant portions of those interviews. As a result, the Court concludes that the security risks associated with allowing Plaintiff access to the videos themselves outweigh his interest in viewing them, such that a protective order is appropriate and Defendants need not produce them to Plaintiff at this time.

There is one exception to the Court's ruling, however. The summary of the interview of Defendant Spivey included in the investigative report to which Plaintiff has access is generally accurate, but the Court notes that there are a few statements that Defendant Spivey made about what happened immediately before the altercation that might be relevant to Plaintiff's claims and do not pose a security risk necessitating protecting them. Given that the rest of Defendant Spivey's interview has been summarized for Plaintiff, the Court discerns no security risk in Plaintiff being

4

provided with a transcript of the potentially relevant portions that are not included in the investigative report.

For these reasons, Defendant's motion for protective order, dkt. [29], is **granted in part** such that the Court concludes that a protective order is appropriate on the issue raised such that Defendants are excused from producing the video recordings and photographs that are the subject of the motion at this time, with one exception detailed herein. Specifically, within **14 days of the date of this Order**, Defendants' counsel shall: (1) provide Plaintiff with a transcript of the following portions of the interview with Defendant Spivey: 1:10 to 1:47 and 1:54 to 2:09 (these times refer to the time stamps on the copy of the video that has been provided to the Court); and (2) file a notice with the Court confirming they have done so. The Court understands that Plaintiff would prefer that a third party do any transcription, but that is not necessary because the Court has a copy of the video of the recording and can compare any transcript provided to that recording to confirm its accuracy. If this case proceeds to trial, the Court will set a status conference to address trial preparations, including whether either Party intends to introduce the videos or photographs at issue at trial and, if so, what access Plaintiff will have to them.

**IT IS SO ORDERED.**

Date: 7/8/2024

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

WILLIE DUMES
905144
PENDLETON – CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Breanne Chambers
Office of Indiana Attorney General
breanne.chambers@atg.in.gov


Katherine A Meltzer
Office of Indiana Attorney General
katherine.meltzer@atg.in.gov